| | |
|---|---|
| JENNIFER L. BOWMAN,<br>　　　　Plaintiff, | Case No. 1:16-cv-1098 |
| | Dlott, J. |
| | Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF | **REPORT AND** |
| SOCIAL SECURITY, | **RECOMMENDATION** |
| 　　　　Defendant. | |

Plaintiff Jennifer L. Bowman brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 11) and the Commissioner's response in opposition (Doc. 15).

## I. Procedural Background

Plaintiff filed her application for DIB in June 2012, alleging disability since May 3, 2012 due to degenerative disc disease of the lumbar spine, migraine headaches, obesity, depression, anxiety, attention deficit hyperactivity disorder, and borderline intellectual functioning. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a hearing before administrative law judge ("ALJ") Andrew Gollin. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On October 6, 2015, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The [plaintiff] has not engaged in substantial gainful activity since May 3, 2012, the alleged onset date (20 CFR 404.1571, *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, migraine headaches, obesity, depression, anxiety, attention deficit hyperactivity disorder, and borderline intellectual functioning (20 CFR 404.1520(c)).[1]

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: she requires some flexibility to change positions from sit to stand and vice versa approximately every 30 minutes. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, kneel, and crawl. She can have no exposure to extreme cold, extreme heat, and vibration. She cannot perform work involving workplace hazards such as mechanical parts or equipment and/or unprotected heights. She cannot perform work involving the operation of motorized vehicles. She can understand, remember, and carry out simple, routine tasks. She can tolerate occasional changes in the workplace setting and workplace duties provided she receives advanced notice and changes are well explained.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565)[2].

---

[1] The ALJ also noted that plaintiff has a history of sleep-related issues, hyperlipidemia, hypothyroidism, and diabetes mellitus. (Tr. 14). The ALJ considered these impairments to be "non-severe" because "there [was] no evidence that these impairments [ ] resulted in significant or disabling symptoms or limitations in functioning." (*Id.*).

7. The [plaintiff] was born on October 31, 1983 and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 3, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14-23).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] Plaintiff has past relevant work as a nurse's aide.  (Tr. 22).
[3] The ALJ relied on the VE's testimony that plaintiff would be able to perform the requirements of representative unskilled sedentary occupations such as receptionist (150 jobs regionally; 25,000 jobs nationally), call out operator (0 jobs regionally; 30,000 jobs nationally), general office clerk (400 jobs regionally; 30,000 jobs nationally), and inspector (100 jobs regionally; 10,000 jobs nationally).  (Tr. 23, 61-63).

preponderance . . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence

Plaintiff went to the emergency room for back pain in April 2012. (Tr. 342-49). On April 26, 2012, an EMG report noted probable right L4-5 radiculopathy. (Tr. 412). On May 15, 2012, plaintiff had an MRI of the lumbar spine. (Tr. 416). The MRI showed focal central protrusion or herniation resulting in mild impingement of the anterior thecal sac at L4-5 with no significant foraminal stenosis. (*Id.*). The MRI also showed focal central extrusion resulting in mild impingement of the anterior thecal sac at the L5-S1 with mild bilateral foraminal narrowing from facet change. (*Id.*).

Plaintiff began treatment with pain management physician Dr. Thomas Knox in July 2012. (Tr. 285-86). On examination, plaintiff exhibited a normal gait, tone, and muscle strength. She had pain in her back limiting her range of motion. (Tr. 285). Dr. Knox assessed low back pain, herniated lumbar disc, and lumbosacral radiculitis. (Tr. 285-86).

Dr. Knox examined plaintiff again on August 17, 2012. (Tr. 287). Dr. Knox noted plaintiff's normal gait, tone, and muscle strength, but also noted plaintiff exhibited pain with back flexion. (Tr. 288). Dr. Knox diagnosed low back pain, herniated lumbar disc, and lumbosacral radiculitis. (Tr. 288). Dr. Knox administered lumbar transforaminal epidural injections on July 30, 2012, August 16, 2012, and September 24, 2012. (Tr. 264-74, 289-291).

Plaintiff visited the emergency room at Fairfield Mercy Medical Center on September 28, 2012 for left leg pain and numbness. (Tr. 330). An MRI examination showed effacement of the left lateral recess at the L5-S1 level likely impinging upon the traversing left S1 nerve root. (Tr. 333). On September 29, 2012, plaintiff was seen in the emergency room at Miami Valley Hospital for continuing back pain. (Tr. 296). She was diagnosed with a herniated disc at L5-S1, with severe radiculopathy with a free fragment below the L5-S1 disc. (Tr. 313). That same day, plaintiff underwent surgical excision of the herniated disc on the left side of L5-S1. (Tr. 313-14).

Plaintiff continued to have pain after her surgery. On November 17, 2012, plaintiff returned to the emergency room, was diagnosed with back pain, and was referred to her treating surgeon for follow-up. (Tr. 326). On December 12, 2012, an EMG showed evidence of mild left S1 radiculopathy. (Tr. 387-88). On January 3, 2013, plaintiff had an MRI of the lumbar spine that showed a minimal diffuse bulge at L4-L5 and that the disc herniation L5-S1 was no longer present. (Tr. 435). The MRI also noted findings consistent with epidural fibrosis in the left lateral epidural space with partial encasement of the left S1 nerve root. (*Id.*).

On February 11, 2013, plaintiff was examined by Dr. John Beresh, M.D., for pain management. On exam, plaintiff displayed normal lumbar spine rotation and positive straight leg raising at greater than 50 degrees. (Tr. 466-67). Her BMI was 39.5, with a height of 5 feet 7

inches and weight of 252 pounds. (Tr. 466). Dr. Beresh assessed displacement of the thoracic or lumbar intervertebral disc without myelopathy and postlaminectomy syndrome in the lumbar region. (Tr. 467). Dr. Beresh prescribed pain medication and physical therapy. (*Id.*).

Plaintiff returned to Dr. Knox on July 16, 2013 for medical management. (Tr. 504). Plaintiff complained of pain localized to the lower back with radiation to the legs bilaterally. (*Id.*). Examination revealed normal gait, tone, and muscle strength, and pain with back flexion. (Tr. 505). Knee jerks were 2+ and ankle jerks were 0. Straight leg raise was negative on the left but positive on the right. (*Id.*). Dr. Knox diagnosed low back pain, herniated lumbar disc, lumbosacral radiculitis, and postlaminectomy syndrome in the lumbar region. (*Id.*). Dr. Knox ordered refills of plaintiff's pain medications and another transforaminal epidural steroid injection at the L5-S1 disc space, which he administered on August 22, 2013. (Tr. 505, 482-83).

Plaintiff continued to treat with Dr. Knox's practice through December 2014. (Tr. 608-651). Examinations consistently showed pain with back flexion, positive straight leg raise, lumbar segmental tenderness at L3-4 and L4-5, and paralumbar rigidity, but normal gait, muscle tone, and muscle strength (*Id.*), with periodic findings of decreased range of motion with back flexion and extension. (Tr. 632, 629, 614, 608). Dr. Knox administered another transforaminal epidural steroid injection on November 13, 2014. (Tr. 613).

Plaintiff began treating with orthopedic surgeon Jennifer Smail, M.D., for back and leg pain in July 2014. (Tr. 571-76). Dr. Smail assessed lumbar pain, lumbar herniated disc, morbid obesity, lumbar degenerative disc disease, and lumbar radiculopathy. (Tr. 574). Dr. Smail noted that despite physical therapy, surgery, and injections, plaintiff's back pain persisted. (Tr. 575). Dr. Smail ordered an updated MRI. (*Id.*).

An August 1, 2014 MRI showed a trace of grade 1 retrolisthesis of L5 on S1, evidence of previous left hemilaminectomy at the L5-S1 level, disc desiccation at L4-L5 and L5-S1, reactive endplate change along the inferior endplate of L5 and superior endplate of S1, posterior central disc bulge at L4-L5 associated with a tear in the annulus fibrosis, with bulging disc material impressing upon the ventral surface of the thecal sac with minimal resulting central canal stenosis, and broad-based posterior disc bulge at L5-S1. (Tr. 568-69).

Dr. Smail examined plaintiff on September 25, 2014 for back pain, pain in the buttocks, and pain, weakness, and numbness in both legs. (Tr. 562). A physical examination revealed normal posture and gait pattern, but weak toe and heal walking on the left. (Tr. 565). Plaintiff could bend forward to her mid-thigh. (*Id.*). Plaintiff exhibited tenderness to the paraspinal muscles in the bilateral lumbar spine; negative muscle spasms in the back; back extension to 20 degrees; negative straight leg raising on the right; and positive 1 low back hamstring straight leg raising on the left. (*Id.*). Dr. Smail diagnosed lumbar radiculopathy and lumbar degenerative disc disease. (Tr. 566). Dr. Smail noted the August 2014 MRI revealed some degenerative changes and a dehydrated and somewhat collapsed lumbar disc. (Tr. 566). Dr. Smail also noted that she would "like to see [plaintiff] trying to get out and about and be active again." (*Id.*). Dr. Smail recommended a series of epidurals with Dr. Knox and surgery if all else failed. (*Id.*).

Dr. Smail examined plaintiff again on August 17, 2015 for low back pain, pain in the buttocks, and pain in both legs. (Tr. 726-733). A physical examination revealed many of the same findings as the September 25, 2014 examination. Plaintiff's posture and gait pattern were normal, but her toe and heel walking were weak on the left. (Tr. 730). Plaintiff still had tenderness in the bilateral lumbar paraspinal muscles. (Tr. 731). Dr. Smail noted that plaintiff was dismissed from pain management because she was directed to take dilaudid, which she had

been prescribed for pain, but a random urine screening showed no dilaudid in her system.  (Tr. 732).  Dr. Smail ordered another MRI and observed that plaintiff "may have a chronic neurogenic pain from her prior herniation."  (Tr. 732).  An August 20, 2015 MRI demonstrated a laminectomy defect on the left side at L5-S1; persistent degenerative disc disease with disc desiccation disc space narrowing at L5-S1 with Modic type I and type II degenerative endplate change; small broad-based disc bulges distal without significant central canal stenosis; mild bilateral neural foramen narrowing; and additional disc desiccation and small amount of disc bulging at L4-L5, without evidence of impingement on the exiting nerve roots.  (Tr. 725).

**E.  Specific Errors**

On appeal, plaintiff argues that the ALJ: (1) erred in failing to give controlling or deferential weight to the opinions of treating physicians Dr. Smail and Dr. Knox; (2) erred in giving inadequate consideration to plaintiff's credibility and subjective complaints as required by 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p; and (3) erred by relying on an improper hypothetical asked to the vocational expert.

**1.  Substantial evidence does not support the weight given to Dr. Smail and Dr. Knox**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR

96-2p, 1996 WL 374188 at *5 (1996)).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Dr. Smail completed a physical RFC questionnaire on January 21, 2015.  (Tr. 596-99).  She noted plaintiff's diagnoses as lumbar pain, lumbar herniated disc, morbid obesity, degenerative disc disease, and lumbar radiculopathy.  (Tr. 596).  Dr. Smail opined that plaintiff's prognosis was "good."  (*Id.*).  In support of her opinion, Dr. Smail identified the following objective findings:  an MRI showing disc desiccation at L4-L5 and L5-S1 and an L4-L5 disc bulge impressing on the ventral surface of the thecal sac.  (*Id.*).  Dr. Smail noted that plaintiff's symptoms were reasonably consistent with plaintiff's symptoms and functional limitations.  (Tr. 597).  She opined that plaintiff's pain and symptoms were severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks.  (*Id.*).  Dr. Smail indicated that plaintiff could tolerate moderate work stress and could sit for one hour at a time, stand for one hour at a time, and sit for a total of four hours and stand/walk for a total of four hours in an eight hour working day.  (Tr. 597-98).  Dr. Smail opined that plaintiff needed to walk every thirty minutes during a working day for at least ten minutes.  (Tr. 598).  Dr. Smail noted that plaintiff needed a job that permits shifting positions at-will from sitting, standing, or walking.  (*Id.*).  Dr. Smail further noted that plaintiff needed to take unscheduled breaks at least every hour.  (*Id.*).  Dr. Smail estimated that plaintiff would be absent from work approximately three days per month as a result of her impairments or treatment.  (Tr. 599).

Dr. Knox completed a lumbar spine RFC questionnaire on March 26, 2015.  (Tr. 657-660).  Dr. Knox listed plaintiff's diagnoses as herniated lumbar disc, bilateral radiculitis, and lumbar postlaminectomy syndrome.  (Tr. 657).  Dr. Knox noted that plaintiff's prognosis was

"poor." (*Id.*). In support of his opinions, Dr. Knox cited to MRI results demonstrating a herniated disc with annular tear at L4-5 and a laminectomy defect at L5-S1. (*Id.*). He also cited to the following positive objective signs: reduced range of motion (flexion causes pain); positive straight leg raising test, left at 30 degrees and right at 30 degrees; and reflex changes (no Achilles reflex bilaterally). (Tr. 658). Dr. Knox opined that plaintiff's impairments were reasonably consistent with her symptoms and functional limitations, and that plaintiff's pain and symptoms were severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks. (*Id.*). Dr. Knox noted plaintiff's side effects from her prescribed medications included confusion and drowsiness. (*Id.*). Dr. Knox opined that plaintiff could sit for thirty minutes at one time before needing to get up; stand for thirty minutes at one time before needing to sit down or walk around; and sit for at least six hours and stand/walk for at least six hours during an eight-hour working day. (Tr. 658-59). In addition, Dr. Knox noted that plaintiff needed to walk approximately every 90 minutes during the work day, walking five minutes each time. (Tr. 659). Dr. Knox opined that plaintiff needed a job that permits shifting positions at-will. (*Id.*). Dr. Knox also opined that plaintiff needed to take two, fifteen minute unscheduled breaks during an eight-hour work day. (*Id.*). He noted that plaintiff could frequently lift and carry items of less than ten pounds in a competitive work situation. (*Id.*). He indicated that plaintiff could never twist, stoop (bend), crouch/squat, or climb ladders, and she could occasionally climb stairs. (Tr. 660). Dr. Knox noted that plaintiff's impairments were likely to produce "good" and "bad" days, estimating that plaintiff would likely miss two days of work per month. (*Id.*).

The ALJ determined that the opinions of Dr. Smail and Dr. Knox were entitled to "partial weight." (Tr. 21). The ALJ determined that the limitations found in Dr. Smail's Physical RFC

Questionnaire from January 21, 2015 "[were] not fully supported by the examination findings or the [plaintiff's] own reports of functioning." (*Id.*). With regard to Dr. Knox, the ALJ found that "[l]ike Dr. Small [sic], Dr. Knox has a long-standing treatment history; however, he has provided inadequate explanation[s] for the limitations provided in his assessment, which are somewhat inconsistent with the record as a whole, as detailed above." (*Id.*).

Plaintiff argues that the ALJ failed to give controlling or deferential weight to Drs. Smail and Knox, her treating physicians. (Doc. 11 at 1). Plaintiff contends that the ALJ failed to conduct a controlling weight analysis and therefore "it is impossible for subsequent reviewers to determine whether the ALJ undertook the 'two-step inquiry' required when analyzing [the] treating source opinion[s]." (*Id.* at 9) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013)). Plaintiff also contends that the ALJ failed to explain how the limitations provided by Dr. Smail and Dr. Knox are inconsistent with the record as a whole. (*Id.* at 10). Plaintiff further contends that the ALJ failed to provide clear and specific reasons why he afforded only partial weight to the opinions of the treating physicians. (*Id.*). According to plaintiff, "the objective evidence of record supports the opinions of Dr. Smail and Dr. Knox that Ms. Bowman's impairments cause limitations that preclude her ability to work 8 hours a day, 5 days a week, on a regular and continuing basis." (*Id.* at 10-11). Plaintiff argues that the opinions of Drs. Smail and Knox are further substantiated by her own testimony concerning daily activities and functioning. (*Id.* at 11).

The Commissioner acknowledges that the ALJ did not expressly discuss the treating physicians' opinions under the two-step inquiry set forth in *Gayheart*. Nevertheless, the Commissioner contends that the ALJ implicitly gave good reasons for affording the opinions of

Drs. Smail and Knox only "partial weight."  (Doc. 15 at 6, citing *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622 (6th Cir. 2010), and *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006)).  The Commissioner contends that the ALJ adopted many of the limitations imposed by plaintiff's treating physicians in assessing plaintiff's RFC.  To the extent the ALJ declined to give weight to Dr. Smail's opinion that plaintiff required a job that would allow her to alternate positions at-will and take unscheduled breaks and that plaintiff would likely be absent from work three days per month, the Commissioner contends that the ALJ provided an extensive discussion of the objective evidence relating to plaintiff's back condition and noted that plaintiff demonstrated largely normal or mild examination findings.  (*Id.* at 7-8).  With regard to the opinion of Dr. Knox, the Commissioner contends that the ALJ considered the objective evidence, including plaintiff's MRI results, reduced range of motion, positive straight leg raising, and reflex changes to find that such evidence did not substantiate the additional limitations indicated in his RFC questionnaire, such as the need to alternate positions at-will and take unscheduled breaks and absences.   (*Id.* at 11).

The Court finds the ALJ failed to properly weigh the opinions of plaintiff's treating physicians and failed to give good reasons why their opinions were entitled to only "partial weight."  The Sixth Circuit requires that "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Wilson*, 378 F.3d at 544 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)).  While the ALJ summarized portions of the medical record prior to weighing the opinions of Drs. Smail and Knox, the Court is unable to discern the evidentiary basis for the

ALJ's decision because his one sentence "analysis" giving each physician "partial weight" provides no clue as to the evidence he relied on for his conclusion. The ALJ declined to give Dr. Smail's opinion controlling weight because "the limitations provided [in the RFC questionnaire that she completed] are not fully supported by the examination findings or the [plaintiff's] own reports of functioning." (Tr. 21). Similarly, the ALJ declined to give Dr. Knox's opinion controlling weight because "he [ ] provided inadequate explanation[s] for the limitations provided in his assessment, which are somewhat inconsistent with the record as a whole, as detailed above." (*Id.*). The ALJ failed to explain these findings or reference Dr. Smail or Dr. Knox's clinical notes or other record evidence which purportedly supports his conclusion that the treating physicians' opinions are inconsistent with the record. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and explain why it is the treating physician's conclusion that gets the short end of the stick."). Both Dr. Smail and Dr. Knox cited to the specific MRI and clinical findings in support of their assessments (Tr. 596, 657-58), and it was incumbent upon the ALJ to explain, with citations to the record, why he believes those objective and clinical findings do not "fully support" or are "somewhat inconsistent with the record as a whole" (Tr. 21) to enable the Court to engage in a meaningful review of the ALJ's decision. The ALJ's reasons for discounting the opinions of Drs. Smail and Knox are impossible to discern from his brief and conclusory statements that the opinions are not supported by the evidence and thus fail to satisfy the "good reasons" requirement for evaluating the treating physicians' opinions. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *Wilson*, 378 F.3d at 544. The ALJ's failure to adequately articulate the reasons for the weight given to Dr. Smail and Dr. Knox's

opinions denotes a lack of substantial evidence. *Blakley*, 581 F.3d at 407.

The ALJ's analysis also falls short of meeting the procedural requirements for evaluating a treating physician's opinion. Where, as here, an ALJ declines to give controlling weight to the opinion of a treating physician, the ALJ must nevertheless balance certain regulatory factors in assessing the weight to give that opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Although the ALJ noted that both Dr. Smail and Dr. Knox had longstanding treatment histories with plaintiff, the ALJ did not acknowledge the specialization of these treating physicians (Dr. Smail is an orthopedic surgeon and Dr. Knox is a pain management specialist), nor did he discuss the frequency of their examinations of plaintiff, the nature and extent of their treatment relationships, the supportability of their opinions, and the consistency of their opinions with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c) (2)-(6). *See also Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. In the absence of any explanation of the "reasons" given by the ALJ for his decision to give partial weight to the opinions of Drs. Smail and Knox, the Court is unable to meaningfully review the ALJ's decision or conclude that the ALJ gave "good reasons" for the weight assigned to the treating physicians' opinions.

The Court cannot say that the ALJ's failure to give "good reasons" for giving only "partial weight" to the opinions of Drs. Smail and Knox is harmless error. The Commissioner argues the ALJ "implicitly" found the opinions of the treating physicians were entitled to only partial weight, suggesting that his failure to expressly discuss their opinions is harmless error, citing *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622 (6th Cir. 2010) and *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006). The Commissioner's reliance on these cases is misplaced.

In *Brock*, the Sixth Circuit upheld the ALJ's analysis of the treating physician's opinion finding it was "clear," albeit "indirect." 368 F. App'x at 625. Here, in contrast, there is nothing "clear" about the ALJ's justifications for affording partial weight to plaintiff's treating physicians. Unlike the ALJ in *Brock* who rejected the treating physician's opinion of "100% disability" based on "essentially benign clinical data" and diagnoses that were not "confirmed by diagnostic or radiological studies," *Id.* at 624-625, the ALJ here adopted many of the limitations imposed by Drs. Smail and Knox without explaining why the limitations he rejected were unsupported by the objective MRI and EMG evidence of record or the clinical findings set forth in the treating physicians' treatment notes.

In *Nelson*, the Court held that the ALJ adequately addressed a treating source's opinions by "indirectly attacking both the consistency of those opinions with the other record evidence and their supportability." *Nelson v.* 195 F. App'x at 472. The Court held that even though the ALJ failed to discuss the weight assigned to two treating physicians, the ALJ's failure to do so constituted harmless error because the ALJ nevertheless satisfied the goals of the Social Security regulation in that his "discussion of the record evidence show[ed] that the ALJ found the opinions . . . to be inconsistent with the other record evidence." *Id.* at 471. Nonetheless, the Sixth Circuit noted that its decision marked a "rare case of the ALJ's analysis meeting the goal of the rule even if not meeting its letter." *Id.* ("The Commissioner's own regulations and our case law state that the Commissioner must provide good reasons for rejecting the medical opinion of a treating source. That rule is a 'procedural protection[.]'") (citing *Wilson*, 378 F.3d at 546). Moreover, the Sixth Circuit has held that the *Nelson* "harmless error" argument does not apply where an ALJ's decision is inconsistent "in that it accept[s] the treating physician's opinion in some respects but reject[s] it in others without explanation." *Bowen v. Comm'r of*

*Soc. Sec.*, 478 F.3d 742, 748 (6th Cir. 2007) (citing *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461-62 (6th Cir. 2005)).  Here, the ALJ accepted portions of both Dr. Smail and Dr. Knox's opinions articulated in their RFC questionnaires, but he failed to explain why he rejected other portions, specifically the limitations regarding plaintiff's need to alternate positions at-will, take unscheduled breaks, and miss two or three work days per month.  These rejected limitations strongly suggest that plaintiff cannot perform substantial gainful activity on a regular and sustained basis.  Social Security Ruling 96-8p defines an RFC as an individual's "maximum remaining ability to do sustained work activities in an ordinary work setting on a *regular and continuing basis* (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule). . . ." Social Security Ruling 96-8p, 1996 WL 374184, at *2 (1996) (emphasis added).  Had the ALJ fully credited the opinions of Dr. Smail and Dr. Knox in determining plaintiff's RFC, plaintiff could not have performed the sedentary jobs identified by the VE on a regular and sustained basis.  The VE testified that if the limitation that an individual would be absent from work two days per month was added to the hypotheticals posed by the ALJ, that limitation would eliminate all the jobs to which he testified, as well as all other jobs in the national economy "[o]n a sustained basis."  (Tr. 63).  Therefore, the Court cannot conclude that the ALJ's failure to provide good reasons for giving partial weight to the opinions of Drs. Smail and Knox is harmless error.

Finally, the Court cannot say that the opinions of Drs. Smail and Knox are "so patently deficient that the Commissioner could not possibly credit" them and therefore excuse the ALJ's failure to conduct a meaningful review in this case.  *Wilson*, 378 F.3d at 546-47.  Both physicians had longstanding treatment relationships with plaintiff; both relied on MRI evidence showing an objective basis for plaintiff's continued back pain, despite her previous lumbar

laminectomy in 2012; both prescribed several treatment modalities in an effort to relieve plaintiff's back pain, including strong pain medications and numerous epidural injections, with no long-lasting relief; and both identified objective and clinical findings in their treatment records that support the limitations they assessed. The Court cannot say that the Commissioner "could not possibly" credit the opinions of Dr. Smail and Dr. Knox. Because the ALJ failed to give good reasons for giving the treating physicians' opinions "partial weight" and adequately consider the factors listed in 20 C.F.R. § 404.1527(c), the ALJ's rejection of the opinions of Dr. Smail and Dr. Knox is not supported by substantial evidence. Accordingly, plaintiff's first assignment of error should be sustained.

### 2. The Court need not reach plaintiff's remaining assignments of error.

It is not necessary to address plaintiff's remaining assignments of error. Because this case should be remanded for the ALJ to reconsider and reweigh the medical opinions of record, this may impact the remainder of the ALJ's analysis, including the plaintiff's credibility and the proper hypothetical questions to be posed to the VE. In any event, even if these assignments of error have merit, the result would be the same, i.e., remand for further proceedings and not outright reversal for benefits. *See Mays v. Comm'r of Soc. Sec.*, No. 1:14-cv-647, 2015 WL 4755203, at *13 (S.D. Ohio Aug. 11, 2015) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015) (Dlott, J.).

### III. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to

re-weigh the medical opinion evidence in accordance with this decision; to reassess plaintiff's RFC, giving appropriate weight to the opinions of Drs. Smail and Knox, including an explanation on the record for the weight afforded those opinions; to reassess plaintiff's credibility; and for further medical and vocational development.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.


Date: _____11-22-17_____          _____*/s Karen L. Litkovitz*_____
                                                 Karen L. Litkovitz
                                                 United States Magistrate Judge

JENNIFER L. BOWMAN,                                    Case No. 1:16-cv-1098
       Plaintiff,                                       Dlott, J.
                                                 Litkovitz, M.J.

       vs.

COMMISSIONER OF
SOCIAL SECURITY,
       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).